UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY KITTKA,

        Petitioner,

                                                              CASE NO. 10-11582

JACKIE FRANKS,                                    HONORABLE GERALD E. ROSEN

        Respondent.
_____/

**OPINION AND ORDER**
**DENYING THE PETITION FOR WRIT OF HABEAS CORPUS**
**BUT GRANTING A CERTIFICATE OF APPEALABILITY**

Petitioner Jeffrey Kittka has filed a habeas corpus petition challenging his Oakland County conviction and sentence of eighteen months to fifteen years for criminal sexual conduct in the second degree. *See* Mich. Comp. Laws § 750.520c(1)(a) (sexual contact with a person under the age of thirteen). Petitioner alleges that his sentence violates the Sixth Amendment and that he was denied effective assistance of counsel at trial, at sentencing, and on appeal. The Court agrees with Respondent, who argues in an answer to the petition, that the state court's adjudication of Petitioner's sentencing claim was objectively reasonable and that Petitioner's ineffective-assistance-of-counsel claim is procedurally defaulted. Accordingly, the habeas petition will be denied.

**I. Background**

Petitioner was charged with two counts of second-degree criminal sexual conduct. The charges arose from allegations that Petitioner touched his niece, M.M., in an inappropriate

manner when M.M. was seven years old.[1]  Petitioner was tried before a jury in Oakland County Circuit Court.  The state court summarized the testimony of the prosecution's witnesses as follows:

> At trial, [M.M.'s] testimony established that she is eight years old and attends the 3rd grade.  Defendant is her uncle and he is married to her aunt Debbie.  They have a child, Jimmy, that is older than her.  Sometimes she and her sister spend the night at Defendant's house.  The last time she was at Defendant's house, she slept in the basement with Defendant and Jimmy.  Jimmy slept on the couch, she slept on the floor and Defendant was behind her.  When she woke up, Defendant had his hand under her pajamas.  Defendant's fingers were touching her private parts where she goes pee.  She pushed his hand away and he stopped.  Defendant touched her private parts other times, but she could not remember how many times.  When [she] got home, she told her mother that Defendant touched her private parts.
>
> [M.M.'s mother's] testimony established that [M.M.] is her daughter and that Defendant is her brother-in-law. [M.M.] would visit about six times a year and would stay overnight at Defendant's house about four times a year.  The last time [M.M.] slept over at Defendant's home was on January 14 and 15 of 2005.  When Defendant and his wife picked up [M.M.] before the overnight stay, [M.M.'s mother] noticed that [M.M.] was apprehensive about going to Defendant's house.  On January 31, 2005, [M.M.] told [her mother] that Defendant had touched her. [M.M.'s mother] took [M.M.] to Care House where she was interviewed.  There was also a police detective and someone from the Prosecutor's Office there to observe.  Since January of 2005, [M.M.'s mother] has notice[d] that [M.M.] has "gotten very down on herself, very low self-esteem . . . and she's fearful of a lot of things."
>
> Detective Mark Boody's testimony established that he is a juvenile detective with the Novi Police Department.  Boody was present when Amy Allen from Care House interviewed [M.M.]  Boody also interviewed Defendant at the police station.  During the interview, Defendant suggested that maybe he is used to sleeping next to his wife and maybe he touched [M.M.] in the way he touches his wife.  However, at no point did Defendant say that [M.M.] was a liar or that she had lied in the past.

*People v. Kittka*, No. 05-201838-FH, at 3-4 (Oakland County Cir. Ct. Jan. 27, 2009).

---

[1] The Court will refer to the complaining witness by her initials.

Petitioner did not testify at trial, but he presented his wife, an attorney, and his wife's friend as witnesses. His wife, Debra Kittka, testified that Petitioner was an honest and loving person, who had a reputation in the community for truth and honesty and for having exceptionally high moral character. Mrs. Kittka also testified that, on the night in question, she observed both Petitioner and M.M. sleeping downstairs on the floor. After about an hour in the room, she went upstairs. She later heard Petitioner come upstairs. They both went to bed, and the next morning, M.M. came upstairs, acted normal, and sat in Petitioner's lap while they watched cartoons. Mrs. Kittka claimed that M.M. sometimes lied or created fantastic stories, and that Petitioner never admitted to intentionally touching M.M. Mrs. Kittka also testified that M.M.'s mother had told her that M.M. thought Petitioner was asleep during the incident in question.

Attorney Theodore Takesian testified that his son was a friend of Petitioner's son. Mr. Takesian testified that Petitioner had a very good reputation for truth, honesty, and good moral character. He claimed that his opinion of Petitioner would not change even if Petitioner had acknowledged that he touched M.M. inappropriately and even if another niece had accused Petitioner of touching her inappropriately.

Donna Holtschneider testified that she knew Petitioner through his wife, who was a friend of hers. Ms. Holtschneider stated that Petitioner had a reputation for being honest, true to his word, and of exemplary moral character. She claimed that her opinion of Petitioner would not change even if she were told about another niece who had accused Petitioner of touching her inappropriately, because Ms. Holtschneider had heard about that incident from Petitioner.

The prosecutor maintained during closing arguments that Petitioner took advantage of his then-seven-year-old niece on two occasions by putting his hand in her pants and rubbing her vaginal area for his own sexual gratification. Defense counsel argued to the jury that reasonable doubt existed and that the alleged touching was not intentional, nor done for a sexual purpose.

On February 1, 2006, the jury found Petitioner guilty of one count of criminal sexual conduct in the second degree. The jury acquitted Petitioner of the other count of criminal sexual conduct. The trial court subsequently sentenced Petitioner to imprisonment for one and a half to fifteen years.

On direct appeal, Petitioner argued that the trial court did not properly instruct the jury on the defense of accident and that he was entitled to re-sentencing because the state sentencing guidelines were incorrectly scored. The Michigan Court of Appeals affirmed Petitioner's conviction and sentence in an unpublished, *per curiam* opinion. *See People v. Kittka*, No. 269425 (Mich. Ct. App. May 22, 2007). Petitioner presented his sentencing claim to the Michigan Supreme Court, which denied leave to appeal because it was not persuaded to review the issue. *See People v. Kittka*, 480 Mich. 893 (2007) (table). On April 14, 2008, the United States Supreme Court denied Petitioner's application for a writ of certiorari. *See Kittka v. Michigan*, 552 U. S. 1310 (2008).

On November 6, 2008, Petitioner filed a motion for relief from judgment in which he alleged that he was denied effective assistance of trial and appellate counsel. The trial court denied Petitioner's motion on the basis that he could have raised his claims on appeal and he failed to demonstrate actual prejudice from the alleged irregularities. The Michigan Court of Appeals denied leave to appeal due to Petitioner's failure to establish entitlement to relief under

4

Michigan Court Rule 6.508(D).  *See People v. Kittka*, No. 290445 (Mich. Ct. App. Mar. 20, 2009).  On February 26, 2010, the Michigan Supreme Court denied leave to appeal for the same reason.  *See People v. Kittka*, 485 Mich. 974 (2009) (table).  Petitioner filed his habeas corpus petition on April 19, 2010.

## II.  Mootness

Petitioner was a parolee when he filed his habeas petition.  He has since been discharged from parole.  Therefore, a threshold question is whether this case is moot.

Article III of the United States Constitution extends judicial power to cases and to controversies.  See U.S. CONST. art. III, § 2, cl.1.  "To satisfy the Article III case or controversy requirement, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision."  *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983 ) (citing *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976)).  "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate."  *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477 (1990).  If an event occurs that makes it impossible for a court to grant any effectual relief to a prevailing party, the case must be dismissed.  *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992).

> In criminal cases, this [case-or-controversy] requirement means that a defendant wishing to continue his appeals after the expiration of his sentence must suffer some "continuing injury" or "collateral consequence" sufficient to satisfy Article III.  When the defendant challenges his underlying *conviction*, [the Supreme] Court's cases have long presumed the existence of collateral consequences.  But when a defendant challenges only an expired *sentence*, no such presumption applies, and the defendant must bear the burden of identifying some ongoing "collateral consequenc[e]" that is "traceable" to the challenged portion of the sentence and "likely to be redressed by a favorable judicial decision."

*United States v. Juvenile Male*, __ U.S. __, __, 131 S.Ct. 2860, 2864 (2011) (internal and end

citations omitted) (emphases in original).

Petitioner alleges that a collateral consequence of his conviction is that he must register as a sex offender. The classification, registration, and community-notification requirements of a state's sex offender statute are collateral consequences of a conviction. *Leslie v. Randle*, 296 F.3d 518, 523 (6th Cir. 2002). The Court therefore finds that Petitioner's challenge to his conviction (habeas claim two) is not moot.

Petitioner's challenge to his sentence (habeas claim one) is a closer issue because Petitioner has been discharged from supervision, and there is no longer an injury that can be redressed by a favorable decision. He nevertheless maintains that, as a result of his sentence, he will suffer the collateral consequence of having his image displayed on the website for the Michigan Department of Corrections for the next three years. Although Petitioner has not cited any case law supporting the contention that having his image on the State's website is a collateral consequence of his sentence, the Court will accept his argument and proceed to address both of his claims, using the following standard of review.

### III. Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 783 (2011). Pursuant to § 2254, state prisoners are entitled to the writ of habeas corpus only if the state court's adjudication of their claims on the merits

    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>   (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786.  To obtain a writ of habeas corpus from a federal court, a petitioner must show that the state court's decision "was so lacking in justification" that it resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 786-87.

### IV.  Discussion

**A.  The Sentence**

Petitioner alleges that he was sentenced in violation of his Sixth Amendment right to a jury trial, as interpreted by the Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004).  Specifically, Petitioner claims that, when scoring offense variable thirteen of the Michigan sentencing guidelines, the trial court relied on facts that Petitioner did not admit and that were not determined by the jury beyond a reasonable doubt.  As a result, alleges Petitioner, the upper limit of the sentencing guidelines range

exceeded eighteen months and he was deprived of the right to an intermediate sanction of twelve months in the county jail.

The Michigan Court of Appeals stated on direct appeal that Petitioner failed to preserve his sentencing issue by raising the issue at sentencing or in a proper motion for re-sentencing or by filing a proper motion to remand in the Court of Appeals.[2] The Court of Appeals also concluded that Petitioner's claim lacked merit because the recommended range for Petitioner's minimum sentence was twelve to twenty-four months, and "the trial court's decision to eschew an intermediate sanction in favor of a minimum term of imprisonment of 18 months constituted no departure for purposes of bringing *Blakely, supra*, to bear." *Kittka*, Mich. Ct. App. No. 269425, at 2-3.

### 1. Legal Framework

Ordinarily, a claim that the State's sentencing guidelines were incorrectly scored is not cognizable on habeas review because "[a] state court's alleged misinterpretation and application of its sentencing laws and guidelines is a matter of state concern only." *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003)(citing *Travis v. Lockhart*, 925 F.2d 1095, 1097 (8th Cir. 1991); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir.1988)); *see also McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006); *Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001). Petitioner, however, alleges that his sentence violates his constitutional right to a jury trial, as set forth in the Sixth Amendment to the United States Constitution.

The Supreme Court interpreted the Sixth Amendment right to a jury trial in *Apprendi* and

---

[2] Respondent has not argued that Petitioner's claim is procedurally defaulted, and the Court is not required to raise the issue *sua sponte*. *Trest v. Cain*, 522 U.S. 87, 89 (1997).

held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. In *Blakely*, the Supreme Court stated that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303 (emphasis omitted). In other words,

> the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant. "[T]he relevant 'statutory maximum,' " . . . "is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings."

*Cunningham v. California*, 549 U.S. 270, 274-275 (2007) (internal and end citations omitted).

### 2. Application

Unlike the determinate sentencing schemes at issue in *Blakely* and *Cunningham*, Michigan has an indeterminate sentencing scheme in which "a defendant receives a minimum sentence and a maximum sentence." *People v. Harper*, 479 Mich. 599, 612 (2007). "[T]he maximum penalty is set by statute, but the minimum penalty is determined by the sentencing court and must fall within a mandated guidelines range." *Montes v. Trombley*, 599 F.3d 490, 496 (6th Cir. 2010) (citing *People v. Drohan*, 475 Mich. 140 (2006)); *see also* Mich. Comp. Laws § 769.8(1). The sentencing guidelines are determined by scoring an offender's prior record variables (prior convictions) and offense variables (circumstances of the crime). *Harper*, 479 Mich. at 613, 616; *People v. McCuller*, 479 Mich. 672, 677 (2007). There is a lower limit and an upper limit to the guidelines. When the upper limit of the sentencing guidelines range is eighteen months or less, the defendant is entitled to be sentenced to an intermediate sanction,

9

which can include a jail term of only twelve months. Mich. Comp. Laws § 769.34(4)(a).

Petitioner's claim stems from the trial court's scoring of offense variable thirteen, which assesses whether the defendant's offense was part of a continuing pattern of criminal behavior. *See* Mich. Comp. Laws § 777.43. The trial court assessed twenty-five points for offense variable thirteen on the ground that Petitioner's offense "was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." Mich. Comp. Laws § 777.43(1)(c). Petitioner argues that the twenty-five points for offense variable thirteen put him in a sentencing guidelines range of twelve to twenty-four months and deprived him of an intermediate sanction under § 769.34(4)(a).

The United States Court of Appeals for the Sixth Circuit has held that, because the sentencing scheme in Michigan is indeterminate, the procedures used to determine a minimum sentence under the Michigan sentencing guidelines do not violate a defendant's right to due process or the right to a jury trial. *Montes*, 599 F.3d at 497-98; *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009), *cert. denied*, __ U.S. __, 130 S. Ct. 3413 (2010). Neither *Montes*, nor *Chontos*, addressed the applicability of the Sixth Amendment to the intermediate-sanctions provision of § 769.34(4)(a). *See Montes*, 599 F.3d at 498, and *Chontos*, 585 F.3d 1002 n.3. This Court nevertheless finds no merit in Petitioner's claim because "[a] sentencing court scores the [offense variables] to calculate the recommended range for the *minimum* portion of the defendant's sentence, not to arrive at the defendant's maximum sentence, which is set by statute." *McCuller*, 479 Mich. at 677 (emphasis in original). In other words, a "sentencing court's factual findings do not elevate the defendant's maximum sentence, but merely determine the defendant's recommended minimum sentence range, which may consequently qualify the

defendant for an intermediate sanction." *Id*. at 690.

Intermediate sanctions are a component of Michigan's statutory scheme for setting a defendant's minimum sentence, *Harper*, 479 Mich. at 624, and merely give the defendant the opportunity to be incarcerated for less than the sentence authorized by the jury verdict or guilty plea. *Id*. at 603-04. Because the trial court's findings of fact did not increase Petitioner's statutory maximum sentence, *Blakely* is not implicated, and Petitioner's sentence did not violate his Sixth Amendment right to a jury trial. He has no right to relief on the basis of his first claim.

## B. Trial and Appellate Counsel

Petitioner's second and final habeas claim alleges that he received ineffective assistance of counsel at trial, during sentencing, and on direct appeal. Petitioner contends that, at trial, his attorney failed to object to hearsay testimony and, at sentencing, his attorney failed to object to the manner in which his sentence was enhanced. Petitioner alleges that his appellate attorney was ineffective for failing to raise a claim about trial counsel and for failing to file a timely motion to remand for re-sentencing. Respondent asserts that Petitioner's ineffective-assistance-of-counsel claim is procedurally defaulted because Petitioner failed to raised the claim on direct appeal.

### 1. The Doctrine of Procedural Default

A procedural default is "a critical failure to comply with state procedural law." *Trest*, 522 U.S. at 89. Under the doctrine of procedural default, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, __ U.S. __, __, 132 S. Ct. 1309, 1316 (2012). Stated differently, a claim is procedurally defaulted and may not be

considered by a federal court on habeas review "[w]hen a habeas petitioner fails to obtain consideration of a claim by a state court . . . due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim." *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977), and *Picard v. Connor*, 404 U.S. 270, 275-80 (1971)). Three elements must be satisfied before a claim may be considered procedurally defaulted: "(1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003).

**2. Application**

The state procedural rule at issue here is Michigan Court Rule 6.508(D), which governs motions for relief from judgment in state court. The rule reads in relevant part:

> **(D) Entitlement to Relief.** The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion
> 
> . . . .
> 
> > (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence . . . unless the defendant demonstrates
> > 
> > > (a) good cause for failure to raise such grounds on appeal . . . , and
> > > 
> > > (b) actual prejudice from the alleged irregularities that support the claim for relief. As used in this subrule, "actual prejudice" means that
> > > 
> > > > (i) in a conviction following a

> trial, but for the alleged error, the defendant would have had a reasonably likely chance of acquittal
>
> . . . .

Mich. Ct. R. 6.508(D)(3).

Petitioner violated Rule 6.508(D)(3) by failing to raise his claim about trial counsel on direct appeal and by asserting the claim for the first time in his motion for relief from judgment and subsequent appeals. Thus, the first element of procedural default is satisfied.

The second element requires a determination of whether the state court enforced Rule 6.508(D)(3). Both the Michigan Court of Appeals and the Michigan Supreme Court issued one-sentence orders denying leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). These "[b]rief orders citing Michigan Court Rule 6.508(D) are not explained orders invoking a procedural bar." *Guilmette v. Howes*, 624 F.3d 286, 289 (6th Cir. 2010). The Court therefore must look to the last reasoned state court opinion to determine the basis for the state courts' rejection of Petitioner's claim. *Id.* at 291.

The last state court to issue a reasoned opinion on Petitioner's claim about trial counsel was the trial court, and it specifically rejected Petitioner's claim on the basis of Rule 6.508(D)(3)(b)(i). The trial court determined that Petitioner would not have had a reasonably likely chance of acquittal absent the alleged errors raised in his motion and, therefore, he had not demonstrated "actual prejudice" under the rule. Because the trial court actually enforced Rule 6.508(D)(3), the second element of procedural default is satisfied.

The third element of procedural default requires asking whether the state court's decision rested "on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). "To qualify as an 'adequate'

procedural ground, a state rule must be 'firmly established and regularly followed.'" *Walker v. Martin*, __ U.S. __, __, 131 S. Ct. 1120, 1127 (2011) (citing *Beard v. Kindler*, 558 U.S. at ——, 130 S.Ct. 612, 618 (2009)). Rule 6.508(D) has been firmly established and regularly followed since 1989 when it went into effect, and the trial court's decision on Petitioner's claim rested entirely on state law. Therefore, the third element of procedural default also is satisfied.

To summarize, Petitioner violated Rule 6.508(D)(3) by failing to raise his claim about trial counsel on direct appeal. The last state court to issue a reasoned order relied on the rule to deny relief, and the rule was an adequate and independent state ground for denying relief. Therefore, "federal habeas review of [Petitioner's] claim[] is barred unless [he] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

### 3. "Cause"

Petitioner claims that his appellate attorney was "cause" for his failure to raise his claim about trial counsel on direct appeal. "Ineffective assistance of appellate counsel can constitute cause to excuse a procedural default." *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (citing *Murray v. Carrier*, 477 U.S. 478, 492 (1986), and *Howard v. Bouchard*, 459, 478 (6th Cir. 2005)), *cert. denied*, __ U.S. __, 131 S. Ct. 2117 (2011). But "[a]ttorney error short of ineffective assistance of counsel . . . does not constitute cause and will not excuse a procedural default." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) (citing *Carrier*, 477 U.S. at 486-88). "[C]ounsel has no obligation to raise every possible claim and 'the decision of which among the possible claims to pursue is ordinarily entrusted to counsel's professional judgment.'" *Jalowiec*

14

*v. Bradshaw*, 657 F.3d 293, 321 (6th Cir. 2011) (quoting *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004)), *petition for cert filed*, No. 11-9704 (U.S. Apr. 3, 2012).

Petitioner must show that (1) his appellate attorney was objectively unreasonable in failing to raise a nonfrivolous issue on appeal and (2) there is a reasonable probability that he would have prevailed on appeal were it not for his attorney's unprofessional errors. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)); *see also Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010). In order to assess Petitioner's claim about appellate counsel, the Court must look at Petitioner's underlying claim about trial counsel.

Petitioner's first allegation about trial counsel is that counsel failed to take adequate precautions to avoid having the jury hear about a second niece whom Petitioner allegedly touched inappropriately. As noted, Petitioner was charged with two counts of criminal sexual conduct involving M.M. A second niece, whom the Court will refer to as K.M., reported that Petitioner also touched her inappropriately. K.M.'s allegations about Petitioner were mentioned at trial during Detective Boody's testimony and during Boody's videotaped interview with Petitioner, which was played for the jury. Petitioner claims that trial counsel should have attempted to excise the references to K.M. from the interview and should not have asked Detective Boody about an incident when Petitioner supposedly put his hand on K.M.'s thigh and a different incident when Petitioner allegedly touched K.M. inappropriately while they wrestled. Detective Boody answered trial counsel's questions by stating that K.M. had said it always happened when they were wrestling and that the touching was above the clothing. (Tr. Jan. 31, 2006, at 274.) Petitioner claims that trial counsel's questions and Detective Boody's testimony

opened the door for the prosecutor to ask Detective Boody on re-direct examination whether Petitioner had touched K.M.'s breast and vagina for a matter of seconds. Boody responded, "Yes." (*Id.* at 275.) This evidence, contends Petitioner, made him appear to be a serial child molester and seriously compromised his defense that the touching was unconscious.

Trial counsel, no doubt, was attempting to establish that the touching of K.M., like the touching of M.M., was unintentional and not done for a sexual purpose. "Simply because counsel's trial strategy was unsuccessful or backfired, does not indicate in any way that petitioner was deprived of effective assistance of counsel," because "the term 'effective' assistance of counsel does not necessarily mean the same as 'successful.'" *Kapsalis v. United States*, 345 F.2d 392, 394 (7th Cir. 1965).

While it is true that trial counsel could have attempted to prevent the prosecution from eliciting any references to K.M., such an attempt likely would have failed. Evidence of other crimes, wrongs, or acts is admissible to show intent or the absence of mistake or accident, Mich. R. Evid. 404(b)(1), and evidence regarding Petitioner's conduct with K.M. tended to show that his touching of M.M. was not accidental or inadvertent. Thus, a motion to prevent the prosecution from eliciting testimony or presenting any evidence of Petitioner's conduct toward K.M. in all likelihood would have been denied. An attorney is not constitutionally ineffective for failing to make a futile objection. *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).

Even assuming that trial counsel's performance was deficient, the deficient performance did not prejudice the defense due to the strength of the evidence against Petitioner. During his interview with Detective Boody, Petitioner acknowledged inappropriately touching M.M. under her underwear. (Tr. Jan. 30, 2006, at 218). Although he claimed that his touching of M.M. was

16

not intentional (*id*. at 205-06; Tr. Jan. 31, 2006, at 233), M.M. testified that Petitioner unbuttoned her pajamas, stuck his hand under her underwear, and moved his fingers. (Tr. Jan. 30, 2006, at 116-17, 135.) She made similar allegations during a forensic interview and claimed that this happened multiple times. (Tr. Jan. 31, 2006, at 267-68.) The jury could have inferred from this testimony that Petitioner's conduct was intentional and done for a sexual purpose.

The Court concludes that trial counsel's questions to Detective Boody about K.M. and counsel's failure to attempt to excise the videotape did not amount to deficient performance, and even if it did, the deficient performance did not prejudice the defense. Therefore, appellate counsel was not ineffective for failing to raising a claim about trial counsel's failure to attempt to eliminate, or object to, references to K.M. "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

Petitioner also claims that trial counsel was ineffective for failing to challenge the trial court's scoring of offense variable thirteen and that appellate counsel was ineffective for failing to preserve the sentencing issue by filing a timely motion to remand for re-sentencing. Petitioner's claim about the scoring of offense variable thirteen lacks merit. *See supra*, section IV.A. Consequently, trial counsel was not ineffective for failing to challenge the scoring of the offense variable thirteen, and appellate counsel's failure to file a timely motion to remand for re-sentencing did not prejudice Petitioner.

The Court concludes for the reasons given above that appellate counsel was not

17

ineffective for failing to raise a claim about trial counsel on direct appeal.[3] Thus, Petitioner has failed to show "cause" for his procedural default, and the Court need not consider whether he was prejudiced by the alleged constitutional errors. *Tolliver v. Sheets*, 594 F.3d 900, 930 n.13 (6th Cir.), *cert. denied*, __ U.S. __, 131 S. Ct. 605 (2010).

### 4. Miscarriage of Justice

The "cause and prejudice" requirement may be overlooked and habeas relief granted "[i]f a petitioner presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust v. Zent*, 17 F.3d 155, 162 (6th Cir. 1994) (citing *Carrier*, 477 U.S. at 496). To be credible, however, "such a claim requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner has not submitted any new evidence to support a claim of actual innocence. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to adjudicate the substantive merits of his second claim.

### V. Conclusion

Petitioner's ineffective-assistance-of-counsel claim is procedurally defaulted, and his sentencing claim lacks merit because the state court's adjudication of the claim was objectively reasonable. Accordingly, the petition for a writ of habeas corpus is **DENIED**.

Reasonable jurists could debate the Court's procedural ruling and assessment of

---

[3] For the same reason, Petitioner has failed to state an independent claim of ineffective assistance of appellate counsel.

Petitioner's claims. Therefore, a certificate of appealability may issue on both of Petitioner's claims. "[A] claim can be debatable even though every jurist of reason might agree, after the [certificate of appealability] has been granted and the case has received full consideration, that [the] petitioner will not prevail." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003).

                                        s/Gerald E. Rosen
                                        Chief Judge, United States District Court

Dated: June 21, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 21, 2012, by electronic and/or ordinary mail.

                                        s/Ruth A. Gunther
                                        Case Manager